CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
8/14/2017
JULIA C. DUDLEY, CLERK
BY: s/ CARMEN AMOS
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| **JENNIFER LLOYD-PITTS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action No. 6:16cv17 |
| | ) |
| **NANCY A. BERRYHILL**[1], | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

## REPORT AND RECOMMENDATION

Plaintiff Jennifer Lloyd-Pitts filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for supplemental security income ("SSI"), and disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433, 1381–1383f. Lloyd-Pitts alleges that the Administrative Law Judge ("ALJ") erred by failing to: (1) find that Lloyd-Pitts's migraine headaches were a severe impairment; (2) properly weigh the medical opinion evidence; and (3) properly evaluate credibility. I conclude that substantial evidence supports the Commissioner's decision in all respects. Accordingly, I **RECOMMEND DENYING** Lloyd-Pitts's Motion for Summary Judgment (Dkt. No. 9) and **GRANTING** the Commissioner's Motion for Summary Judgment. (Dkt. No. 11).

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to

---

[1] Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, I substitute Nancy A. Berryhill for Carolyn W. Colvin as the defendant in this suit.

support the Commissioner's conclusion that Lloyd-Pitts failed to demonstrate that she was disabled under the Act.[2] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Lloyd-Pitts filed for SSI and DIB on June 9, 2010, claiming that her disability began on December 10, 2009, due to severe migraines, depression, emotional problems, and pain.[3] R. 369, 378, 410, 414. The state agency denied Lloyd-Pitts's applications at the initial and reconsideration levels of administrative review. R. 118–124, 125–131, 134–42, 143–51. On September 28, 2011, ALJ Mark A. O'Hara held a hearing to consider Lloyd-Pitts's claims for DIB and SSI. R. 49–78. On February 13, 2012, the ALJ issued an opinion determining that Lloyd-Pitts was not disabled. R. 157–80. However, on July 26, 2013 the Appeals Council granted Lloyd-Pitts's request for review and remanded the case to the ALJ to evaluate new evidence received, evaluate other treating opinion evidence, and obtain additional evidence to

---

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[3] Lloyd-Pitts's date last insured was December 13, 2014, thus, she must show that her disability began on or before this date and existed for twelve continuous months to receive DIB. R. 19, 218; 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a).

complete the administrative record.[4] 19, 187–89. The ALJ held a second hearing on May 21, 2014. R. 81–117. Lloyd-Pitts was represented by counsel at the hearing, which included testimony from impartial medical expert Charles L. Cooke, M.D. and vocational expert Gerald K. Wells, Ph.D.[5]

On January 8, 2015, the ALJ entered his decision analyzing Lloyd-Pitts's claims under the familiar five-step process[6] and denying her claim for benefits. R. 19–38. The ALJ found that Lloyd-Pitts was insured at the time of the alleged disability onset and that she suffered from the medically determinable impairments of migraine headaches, knee pain, kidney stones, depression, and anxiety, but that none of these impairments were severe because they did not significantly limit her ability to perform basic work activities. R. 21–22. Thus, the ALJ concluded that Lloyd-Pitts was not disabled, and denied her claim at step two of the sequential evaluation. R. 38. Lloyd-Pitts appealed the ALJ's decision and the Appeals Council denied her request for review on March 21, 2016. R. 1–3.

---

[4] The new evidence was a headache impairment questionnaire completed by treating neurologist, Ivan Login, M.D, and the ALJ was also generally instructed to evaluate Dr. Login's opinion. R. 187–88. The Appeals Council further instructed the ALJ to evaluate the treating source opinion from Lynn Montgomery, M.D., Ph.D.; however, it was later determined that Dr. Montgomery never treated Lloyd-Pitts. R. 188, 23.

[5] Lloyd-Pitts is now represented by different counsel, who filed a motion for summary judgment on her behalf.

[6] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975). If the Commissioner finds that a claimant is disabled or not disabled at a step, the inquiry ends without proceeding to the next step of the sequential evaluation process. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4).

## ANALYSIS

Lloyd-Pitts alleges that the ALJ erred by failing to (1) find that her migraine headaches were severe; (2) properly weigh the medical opinion evidence; and (3) properly evaluate her credibility.

### A. Relevant Medical History

Lloyd-Pitts complained of migraine headaches both prior and subsequent to her alleged onset date of December 2009, presenting on multiple occasions to her treating practitioners and the emergency room.[7] In August 2009, neurologist Charles R. Joseph, M.D., noted that Lloyd-Pitts had "at least ten years of recurrent migraine headaches" and diagnosed "frequent classic migraines."[8] R. 559. In January 2010, Dr. Joseph wrote Lloyd-Pitts a letter stating that, as is typical of patients suffering from migraine headaches, she consistently had "perfectly normal neurologic exam[s]," and that in his "thirty years of practice" he had "never seen a patient get disability for migraine . . . ." R. 752. Lloyd-Pitts returned to Dr. Joseph for follow-up visits related to her migraine headaches until he referred her care to the neurology department at the University of Virginia in June 2010. R. 749. In his referral letter, Dr. Joseph indicated that Lloyd-Pitts suffered from refractory headaches, and noted "her migraine frequency and severity also are complicated by secondary gain issues which have entered into the picture, including disability issues." R. 749.

(1) Treating Neurologist Ivan S. Login, M.D.

---

[7] Records document that Lloyd-Pitts was treated in the emergency room for migraine headaches in May, September, and December 2009, January, February, May, June , September, November, and December 2010, and March, April, and June 2011. R. 723, 699, 691, 683, 641, 634, 617, 920, 865. 1210, 1182. Lloyd-Pitts notes in her brief that her records show "at least 13 emergency room visits" for headaches. Pl.'s Br. at 6, Dkt. No. 10.

[8] At Lloyd-Pitts's hearing, the ALJ noted that he had "records [of migraine headaches] dating back to 1999." R. 60.

4

In July 2010, Dr. Login, a neurologist at the University of Virginia, evaluated Lloyd-Pitts for refractory migraine headaches. R. 960–64. On examination, Dr. Login noted significant left supraorbital tenderness to palpation and percussion and mild left occipital pain, and indicated that she had an "escalating history of migraine with aura." R. 963. On July 28, 2010, Lloyd-Pitts underwent a left supraorbital nerve block. R. 957. Lloyd-Pitts reported to Dr. Login that the supraorbital nerve block was effective in treating her headache pain, but that her insurance company was "refusing further injections." R. 956. Then, in January 2011, Lloyd-Pitts underwent botox injections for headache prevention, which proved ineffective. R. 950, 1021. In March 2011, Lloyd-Pitts reported "daily pain" and nausea and "near daily" vomiting to Dr. Login and on exam she had profound left supraorbital neuralgia.[9] R. 1020–21. Lloyd-Pitts followed up with Dr. Login in November 2011, January and August 2012, and by phone in November 2013, for "chronic intractable migraine." R. 1237–40. In an undated treatment summary, Dr. Login wrote she "has been on virtually every treatment we can offer" and that her migraines have "failed to respond in any meaningful way to a vast array of drugs and interventions" with nothing "really making a difference." R. 1237, 1240. Dr. Login also noted, that on referral to the pain clinic in November 2013, it was discovered that Lloyd-Pitts was obtaining opiates from six different providers, within a two month period. R. 1239. However, he wrote that the behavior had stopped. Id.

On April 12, 2012, Dr. Login completed a Headaches Impairment Questionnaire noting that Lloyd-Pitts experienced severe daily migraine headaches with aura, accompanied by

---

[9] Supraorbital neuralgia is a rare disorder with localized pain in or above the eyebrow, and clinically characterized by the following triad: (1) forehead pain in the area supplied by the supraorbital nerve, (2) tenderness on either the supraorbital notch and (3) absolute, but transitory relief of symptoms upon supraorbital nerve blockade. https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3304207/

5

nausea/vomiting, photosensitivity, visual disturbances, and sensitivities to noise and odors.[10] R. 1225–30. Dr. Login also indicated that she would likely be absent from work more than three times a month. R. 1229.

In May 2014, Dr. Login wrote a letter stating that he did not think that Lloyd-Pitts' headaches are explained by rebound or medication overuse. R. 1268. Dr. Login wrote a second letter in June 2014 disagreeing with the medical expert's opinions regarding Lloyd-Pitts's migraines, specifically the absence of objective tests showing disability. R. 1518–19. Dr. Login emphasized that a headache disorder of the type Lloyd-Pitts suffers from presents "NO objective elements to find on testing or examination." R. 1518.

(2) State Agency Physicians

In September 2010 and February 2011, Donald Williams, M.D. and Robert Keeley, M.D., state agency physicians, reviewed the record and found that Lloyd-Pitts had no severe physical impairment. R. 120–24, 134–41.

### B. Migraine Headaches Not a Severe Impairment

Lloyd-Pitts argues that the ALJ incorrectly found that her migraine headaches were not severe impairments. In support, Lloyd-Pitts asserts that, in determining the severity of her migraines, the ALJ did not properly weigh the opinion of her treating neurologist, Dr. Login, and

---

[10] On January 27, 2011, Thomas E. Dobyns, M.D., who treated Lloyd-Pitts for migraines in September and December 2010, wrote the following in response to Lloyd-Pitts's attorney's request for a narrative report and impairment questionnaire:

> At this time I have seen [Lloyd-Pitts] only twice for Migraine Headache . . . both times I adjusted preventative meds, used a 12 day package of prednisone, and politely refused the request for narcotics.
>
> If you stick to your request for these reports, then I must send back a very non helpful review and opinion. I certainly think she has no physical impairments and since my interactions have been this limited, I do not believe she is disabled by her Migraines.

R. 1047.

improperly determined Dr. Login's opinions were based on sympathy. Lloyd-Pitts further states that the ALJ incorrectly discounted Dr. Login's opinion because of purported drug seeking behavior by plaintiff, and placed too much weight on reports from treating sources N.P. Cook and Drs. Joseph and Dobyns, as well as non-examining consultants.

An impairment is non-severe when it causes no significant limitations in the claimant's ability to work. 20 C.F.R. §§ 404.1521(a), 416.921(a). "[A]n impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984) (citing Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984)). Additionally, an impairment must last, or be expected to last for a continuous period of at least 12 months to be considered "severe." 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii). Lloyd-Pitts bears the burden of proving that her impairments are severe. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

Here, substantial evidence supports the ALJ's conclusion that Lloyd-Pitts's impairments were non-severe, and indicates that the ALJ did not err by ending his inquiry at step two. Notably, Lloyd-Pitts has not identified any medical records or opinions that the ALJ failed to consider, but rather asks the court to reweigh the evidence, which I am not permitted to do. In his opinion, the ALJ provided a detailed history of Lloyd-Pitts's medical treatment, as well as her testimony at both the September 2011 and May 2014 hearings. R. 22–31. He broadly concluded that her treatment record did "not support her allegations regarding the severity of her limitations." R. 31. Regarding her migraines, the ALJ noted that Lloyd-Pitts's records provide no objective evidence, as "she rarely appeared in distress despite her reports of pain," had multiple instances of drug-seeking behavior, had normal physical examinations, and had normal

7

radiological images of her head. R. 32. However, the ALJ also specifically recognized that "the lack of objective findings is common with migraines." Id. The ALJ concluded that, because Lloyd-Pitts's pain and other alleged symptoms were not substantiated by the objective medical evidence, he was "left solely with determining the credibility of [her] assertions" and she was "simply not credible." R. 32–33. In support of this finding, the ALJ noted that, despite her claims of "excruciating pain" she "almost never appeared in any distress" and was able to text and read on her phone, and reported decorating her Christmas tree, playing volleyball, lifting her grandmother, and moving heavy boxes.[11] R. 33.

Furthermore, the ALJ noted multiple statements by Lloyd-Pitts at the 2011 and 2014 hearings that were contradicted by the record. Her statement at the 2011 hearing that she vomited 1-6 times per day, spending 15-20 minutes in the bathroom on each occasion (R. 61), was contradicted by the fact that the record did not show weight loss, but rather weight gain. Her claim that she spent an average of 23 hours in bed each day was contradicted by a lack of ongoing complaints to her doctors, or treatment for bedsores. R. 23, 33.[12] Id. Her claims regarding alcohol and tobacco use, that she had lost 50 pounds due to headache pain, and played no sports were also belied by the record.[13] Id.

---

[11] Lloyd-Pitts argues that her "ability to engage in sporadic and relatively undemanding activities of daily living" is not inconsistent with an inability to perform full-time work. Pl.'s Br. at 22, Dkt. No. 10. However, an ALJ may rely on evidence regarding a plaintiff's routine, non-work activities in rejecting a claim of disability. See Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005) (citing Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986)).

[12] At the 2014 hearing, Lloyd-Pitts claimed she was in bed "all day long" about 25 days per month. R. 88–89.

[13] Specifically, Lloyd-Pitts: (1) testified that she had never smoked more than a quarter pack of cigarettes per day, but reported in July and October 2011, smoking half a pack per day; (2) testified that she never drank alcohol, but reported occasional alcohol use in July 2013; (3) testified at the 2014 hearing that she had lost 50 pounds since July 2013, but her records actually indicate she weighed 159 pounds in July 2013 and 153 pounds in December 2013; (4) testified that she had not played sports since 1992, but was treated in May 2001 for a fall sustained "while running going for a volleyball" (R. 1190). R. 33.

The ALJ cited to impartial medical expert Dr. Cooke's testimony regarding the lack of objective findings in the record, as well as overuse of narcotic medication. The ALJ wrote:

> The opinion of Dr. Cooke is given great weight. Dr. Cooke had the advantage of reviewing all of the medical evidence as of the hearing and listening to [Lloyd-Pitts] testimony. His opinion is also consistent with [Lloyd-Pitts] lack of objective findings, her lack of credibility, and her drug-seeking behavior. Moreover, his opinion is consistent with the opinions and statements of [] treating providers Ms. Cook, Dr. Joseph, Dr. Dobyns, and with the DDS doctors Williams, Keeley, McClain, and Jennings.

R. 37. The ALJ also referenced the opinions of the state agency physicians, both who found no severe physical impairments, and gave "great weight" to treating neurologist Dr. Joseph, treating primary care provider Dr. Dobyns, and Nurse Practitioner Cook's unwillingness to support Lloyd-Pitts's claim for disability.[14] R. 36–37.

Lloyd-Pitts simply has not met her burden of establishing that her impairments are severe, including the requirement that an impairment be expected to last for at least 12 months. See 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii). Thus, the ALJ's step two analysis is supported by substantial evidence and should not be disturbed.

### C. Medical Opinion Evidence

Lloyd-Pitts argues that Dr. Login's opinion regarding her migraine headaches should have been given controlling weight. In support, Lloyd-Pitts emphasizes that Dr. Login is her

---

[14] Lloyd-Pitts argues that "no negative inference" should be drawn from the reports of Drs. Joseph and Dobyns, and Nurse Practitioner Cook, characterizing their responses as an indication that "they would not offer opinions on disability." Pl.'s Br. at 23, Dkt. No. 10. However, these providers did not merely decline to offer an opinion on disability. Dr. Dobyn's wrote that, if Lloyd-Pitts's attorney continued to request that he fill out an impairment repair he would send back "a very nonhelpful review and opinion" and indicated that he did not believe she was disabled by her migraines. R. 1047. Dr. Joseph included in a record that in his thirty years of practice he had never seen a patient get disability for suffering from migraines, and also wrote that Lloyd-Pitts's migraine frequency and severity are complicated by secondary gain, including disability issues. R. 749, 752. Finally, NP Cook, specifically stated that she did not have "any reasonable reason" for Lloyd-Pitts to be on disability. R. 569.

treating physician, who is a board certified specialist in treating headaches, and argues that his opinion was based on his medical findings, and not sympathy. Lloyd-Pitts writes:

> Given the consistent and well-documented evidence of headaches suffered by Ms. Pitts in the record it is hard to fathom how the ALJ believed that Dr. Login, a senior neurologist who has specialized in headache medicine for 15 years, was merely rendering opinions on plaintiff's subjective complaints based on sympathy for plaintiff.

Pl.'s Br. at 21, Dkt. No. 10. Lloyd-Pitts asserts that Dr. Login's opinions were consistent with her chronic migraines, her poor response to treatment, and treatment and hospital records documenting "constant, daily headaches and regular migraines that last for multiple days." Pl.'s Br. at 20, Dkt. 10.

The ultimate decision on whether Lloyd-Pitts meets the statutory definition for disability is always reserved to the Commissioner, and thus Dr. Login's opinion on Lloyd-Pitts's disability was entitled to no special weight. See Morgan v. Barnhart, 142 F. App'x 716, 722 (4th Cir. 2005). However, the regulations require that an ALJ give the opinion of a treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). The ALJ must give "good reasons" for not affording controlling weight to a treating physician's opinion. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Saul v. Astrue, No. 2:09–cv–1008, 2011 WL 1229781, at *2 (S.D.W.Va. March 28, 2011). Further, if the ALJ determines that a treating physician's medical opinion is not deserving of controlling weight, the following factors must be considered to determine the appropriate weight to which the opinion is entitled: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. §§ 404.1527(c)(2)-(5), 416.927(c)(2)-(5). "None of these

10

factors may be omitted or disregarded by the ALJ in weighing the value of a treating physician's opinion." Ricks v. Comm'r, No. 2:09cv622, 2010 WL 6621693, at *10 (E.D. Va. Dec. 29, 2010).

Here, the ALJ appropriately considered these factors and the record, in determining the weight to give to the opinion of Dr. Login. The ALJ gave Dr. Login's opinion little to no weight, noting that his opinions are not consistent with the longitudinal record and are based on Lloyd-Pitts's reported symptoms, which the ALJ finds not credible. R. 35–36. The ALJ characterized Dr. Login as "losing his objectivity" and taking on an "advocacy role" for Lloyd-Pitts, and noted that no other treating source indicated that Lloyd-Pitts was disabled. R. 36. In support, the ALJ emphasized that Dr. Login's opinion "fails to recognize" or credit factors affecting the veracity of Lloyd-Pitts's headache complaints, including seeking narcotics from multiple sources, reporting "excruciating pain" yet not appearing in distress, and engaging in activities inconsistent with her claim that she is virtually bedridden. R. 35–36.

Lloyd-Pitts argues that the records cited by the ALJ as showing drug-seeking behavior are not consistent with substance abuse. Pl.'s Br. at 22, Dkt. No. 10. The ALJ wrote:

> [T]he record shows multiple instance of [Lloyd-Pitts] obtaining narcotic medications from multiple different providers, taking more medication than prescribed, and [] providers refusing to prescribe requested narcotics. Additionally a provider felt her headaches were affected by secondary gain issues.

R. 33. A review of the records cited by the ALJ shows that providers did suspect drug-seeking behavior: (1) Record from December 2009 indicates "Lloyd-Pitts prescription monitoring list [] shows multiple narcotic prescriptions in the past year from 13 different prescribers[15] and indicates "I will not manage her on chronic narcotic therapy"; (2) Records from an admission in October 2011 to Lynchburg General Hospital indicate "no narcotics given as [patient] appeared

---
[15] Lloyd-Pitts characterizes this note as indicating she was "getting treatment from multiple clinics because she could not get sufficient relief from her headaches." Pl.'s Br. at 22, Dkt. No. 10.

11

to be drug-seeking." R. 1152; (3) Dr. Login's summary of treatment shows that, upon Lloyd-Pitts referral to the pain clinic they "found she was getting opiates from 6 different providers within 2 months but that has stopped."[16] R. 1239. Further, there are other medical records showing concern from providers about prescribing narcotics to Lloyd-Pitts. The emergency room record from January 26, 2011 notes that "this is [Lloyd-Pitts's] 13th ER visit in the past 12 months" and indicates that it would be "unethical" for the doctor to prescribe narcotics because "using narcotics to treat chronic headaches has been shown to increase both the frequency and severity of headaches." R. 1091. In February 2011, the emergency room doctor refused to prescribe Lortab, writing "very concerning for drug seeking behavior." R. 1078.

Lloyd-Pitts also cites to Duncan v. Astrue, No. 4:06-CV-230-FL, 2008 WL 111158, at *6 (E.D.N.C. Jan. 8, 2008), where the court found the ALJ improperly discredited a treating physician's opinion as not supported by objective findings, because migraine headaches "cannot be diagnosed or confirmed through laboratory or diagnostic testing." However, in Duncan, there was no medical evidence in the record contradicting the treating physician's opinions regarding migraine severity. Id. at *6. Here, there is such evidence, including medical opinions from state agency physicians Williams and Keeley, records from Drs. Joseph and Dobyns and NP Cook showing a refusal to support Lloyd-Pitts's disability, reported activities inconsistent with Lloyd-Pitts complaints, and documented drug-seeking behavior, all discussed by the ALJ. Further, in this case, the ALJ explicitly recognized that a lack of objective findings is common with migraines, thus leaving him to determine whether her migraine headache complaints were credible. R. 33. He concluded, "given the combination of [Lloyd-Pitts's] lack of credibility and no objective findings relative to her headaches" her migraine headaches are not a severe

---

[16] However, Lloyd-Pitts correctly points out that in the August 2010 record by Dr. Login does not indicate substance abuse. R. 765–66.

12

impairment. Thus, unlike the ALJ in Duncan, the ALJ did not impermissibly require objective evidence of Lloyd-Pitts's migraine pain in determining how much weight to give to Dr. Login's opinion. 2008 WL 111158, at *6.

The ALJ considered the opinion of Dr. Login, together with all of the evidence in the record, and determined that Lloyd-Pitts migraine headaches were not a severe impairment, and that she was not disabled. Having reviewed the record as a whole, I find that substantial evidence supports the ALJ's decision to give the opinion of Dr Login little to no weight, and recommend that it be affirmed.

**D. Credibility[17]**

Lloyd-Pitts argues that the ALJ's credibility findings are not supported by substantial evidence. In support, Lloyd-Pitts asserts that the ALJ's findings regarding a lack of objective evidence, her failure to appear in acute distress during medical visits, alleged drug-seeking behavior, and ability to perform "activities of daily living are not inconsistent with a finding of disability." Pl.'s Br. at 27. Lloyd-Pitts further maintains that the ALJ "unduly focused on *de*

---

[17] I note that in March 2016, the Social Security Administration superseded the language of SSR 96-7P when it ruled in SSR 16-3P that "credibility" is not appropriate terminology to be used in determining benefits. See Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3P (S.S.A. Mar. 16, 2016) (effective March 28, 2016). "[W]e are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term. SSR 16-3 at *1. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character." Id. Thus, under SSR 16-3P, the ALJ is no longer tasked with making an overarching credibility determination and instead must assess whether the claimant's subjective symptom statements are consistent with the record as a whole.

Here, SSR 16-3P was issued after the ALJ's consideration of Lloyd-Pitts's claim, and both the ALJ's opinion and the parties' briefs speak in terms of a "credibility" evaluation. Accordingly, I will analyze the ALJ's decision based on the provisions of SSR 96-7p, which required assessment of the claimant's credibility. See Keefer v. Colvin, No. CV 1:15-4738-SVH, 2016 WL 5539516, at *11 (D.S.C. Sept. 30, 2016); Ford v. Colvin, No. 2:15-CV-05088, 2016 WL 5171986, at *5 (S.D.W. Va. Sept. 21, 2016); Hose v. Colvin, No. 1:15CV00662, 2016 WL 1627632, at *5 (M.D.N.C. Apr. 22, 2016); Lopez v. Colvin, No. 3:16CV24 (JAG), 2016 WL 6594107, at *4 (E.D. Va. Oct. 13, 2016) (noting "[t]he Agency does not have the power to engage in retroactive rulemaking").

However, I note that the methodology required by both SSR 16-3P and SSR 96-7P, are quite similar. Under either, the ALJ is required to consider Lloyd-Pitts's report of her own symptoms against the backdrop of the entire case record; in SSR 16-3, this resulted in a "credibility" analysis, in SSR 16-3, this allows the adjudicator to evaluate "consistency."

13

*minimis* inconsistencies" in the record, including precise smoking and drinking habits, and whether she currently played sports. Id.

It is for the ALJ to determine the facts of a particular case and to resolve inconsistencies between a claimant's alleged impairments and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Lloyd-Pitts's subjective allegations of her disabling symptoms and impairments are not conclusive on their own; rather, subjective complaints and statements of symptoms, like all other evidence of disability, are considered in the context of the Record as a whole. 20 C.F.R. §§ 404.1529, 416.929 (2014). If a claimant's statements are inconsistent with other evidence, the ALJ may find them less than fully credible and weigh them accordingly. See SSR 96-4P, (July 2, 1996); SSR 96-7P (superseded by SSR 16-3P, (March 28, 2016)).

The ALJ's opinion considered Lloyd-Pitts's medical history, as well as her own allegations regarding her pain and symptoms. The ALJ recognized that she reported the necessary "findings" to her doctors to establish migraine headaches as a medically determinable impairment under agency policy; however, he ultimately found that Lloyd-Pitts was "simply not credible." R. 32–33. In support, the ALJ wrote:

> At almost every visit in the record, [Lloyd-Pitts] reported some type of excruciating pain, yet she almost never appeared in any distress. In fact, despite her allegations of such significant and disabling pain, she was observed engaging in activities, such as texting and reading on her phone, and she reported activities such as decorating her Christmas tree, playing volleyball, lifting her grandmother, and moving heavy boxes.

R. 33. Indeed, an ALJ may properly rely on evidence regarding a plaintiff's routine, non-work activities in rejecting a claim of disability. See Johnson, 434 F.3d at 659. The ALJ also noted specific drug-seeking behaviors shown in the record, the fact that, with the exception of Dr. Login, her other "providers did not feel she was disabled," and multiple inconsistent statements, all discussed above. R. 33.

A reviewing court gives great weight to the ALJ's assessment of a claimant's credibility and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight). Further, a reviewing court will defer to the ALJ's credibility finding except in those "exceptional" cases where the determination is unclear, unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all. See Bishop v. Comm'r of Soc. Sec., 583 F. App'x 65, 68 (4th Cir. 2014) (citing Edeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997)).

The ALJ's opinion was thorough and applied the proper legal standard, and I will not re-weigh the evidence or disturb his credibility finding. Therefore, I find that substantial evidence exists to support the ALJ's determination that Lloyd-Pitts's testimony is not credible, and that Lloyd-Pitts has no severe impairments.

## **CONCLUSION**

For the foregoing reasons, I **RECOMMEND** that Lloyd-Pitts's Motion for Summary Judgment be **DENIED** and the Commissioner's Motion for Summary Judgment be **GRANTED** and this case be **DISMISSED** from the court's docket.

The Clerk is directed to transmit the record in this case Norman K. Moon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period

prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including the waiver of the right to appeal.

Entered: August 14, 2017

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge